# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| AEARO TECHNOLOGIES LLC, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. N23C-06-255-SKR CCLD |
| ACE AMERICAN INSURANCE COMPANY, *et al*. | ) ) ) ) | |
| Defendants. | ) ) ) | |

Submitted: July 9, 2024
Decided: July 15, 2024

*Upon Plaintiffs' Motion for Partial Summary Judgment*:
**DENIED.**

*Upon General Star's Motion for Partial Summary Judgment:*
**GRANTED IN PART AND DENIED IN PART.**

*Upon Twin City's Motion for Partial Summary Judgment:*
**GRANTED.**

## MEMORANDUM OPINION AND ORDER

David J. Baldwin, Esq., Peter C. McGivney, Esq., Zachary J. Schnapp, Esq., BERGER MCDERMOTT LLP, Wilmington, Delaware, Donald W. Brown, Esq., Gretchen A. Hoff Varner, Esq., COVINGTON & BURLING LLP, San Francisco, California, Anna P. Engh, Esq., COVINGTON & BURLING LLP, Washington, DC, Rani Gupta, Esq., COVINGTON & BURLING LLP, Palo Alto, California. *Attorneys for Plaintiffs Aearo Technologies LLC, Aearo Holding LLC, Aearo Intermediate LLC, Aearo LLC, and 3M Company*.

Garrett B. Moritz, Esq., R. Garrett Rice, Esq., ROSS ARONSTAM & MORITZ LLP, Wilmington, Delaware, Daren S. McNally, Esq., Barbara M. Almeida, Esq., Daniel B. Palmer, Esq., CLYDE & CO US LLC, Morristown, New Jersey. *Attorneys for*

*Defendant ACE American Insurance Company.*

Joseph B. Cicero, Esq., Gregory E. Stuhlman, Esq., Thomas A. Youngman, Esq., CHIPMAN BROWN CICERO & COLE, LLP, Wilmington, Delaware, Charles E. Spevacek, Esq., Alexander V. Tibor, Esq., MEAGER & GEER, P.L.L.P., Minneapolis, Minnesota. *Attorneys for Defendants American National Fire Insurance Company and Great American Insurance Company*.

John C. Phillips, Jr., Esq., David A. Bilson, Esq., PHILLIPS MCLAUGHLIN & HALL, P.A, Wilmington, Delaware, Cara Tseng Duffield, Esq., Lena Mirilovic, Esq., LAVIN RINDNER DUFFIELD LLC, Washington, DC. *Attorneys for General Star Indemnity Company.*

Kurt M. Heyman, Esq., Aaron M. Nelson, Esq., Brendan Patrick McDonnell, Esq., HEYMAN ENERIO GATTUSO & HIRZEL LLP, Wilmington, Delaware, Leah Godesky, Esq., O'MELVENY & MYERS LLP, Los Angeles, California, Allen Burton, Esq., Jonathan Rosenberg, Esq., Charles Scibetta, Esq., Andrew Poplinger, Esq., Erin Valentine, Esq., O'MELVENY & MYERS LLP, New York, New York. *Attorneys for Defendants Illinois National Insurance Company, American International Specialty Line Insurance Company, and National Union Fire Insurance Company of Pittsburgh, PA.*

Philip Trainer, Jr., Esq. Marie M. Degnan, Esq. ASHBY & GEDDES, Wilmington, Delaware, Jodi McDougall, Esq., Terri A. Sutton, Esq., COZEN O'CONNOR, Seattle, Washington. *Attorneys for Liberty Insurance Underwriters, Inc. and Liberty Surplus Insurance Corporation.*

John D. Balaguer, Esq., BALAGUER, MILEWSKI, & IMBROGNO, Wilmington, Delaware, James H. Kallianis Jr., Esq., Andrew J. Candela, Esq., SKARZYNSKI MARICK & BLACK LLP, Chicago, Illinois. *Attorneys for Defendants Steadfast Insurance Company and American Guarantee & Liability Insurance Company.*

Joseph B. Cicero, Esq., Gregory E. Stuhlman, Esq., CHIPMAN BROWN CICERO & COLE, LLP, Wilmington, Delaware, Michael J. Smith, Esq., Bryan W. Petrilla, Esq., STEWART | SMITH, West Conshohocken, Pennsylvania. *Attorneys for Defendant TIG Insurance Company.*

Peter B. Ladig, Esq., Elizabeth A. Powers, Esq., Justin C. Barrett, Esq., BAYARD, P.A., Wilmington, Delaware, Suzanne C. Midlige, Esq., Michael E. Hrinewski, Esq., COUGHLIN MIDLIGE & GARLAND LLP, Morristown, New Jersey. *Attorneys for*

*Defendant Transverse Specialty Insurance Company.*

David J. Soldo, Esq., MORRIS JAMES LLP, Wilmington, Delaware, Joshua D. Weinberg, Esq., Sean T. Kelly, Esq., RUGGERI PARKS WEINBERG LLP, Washington, DC. *Attorneys for Defendant Twin City Fire Insurance Company.*

**Rennie, J.**

# I. INTRODUCTION

This breach of contract case is assigned to the Complex Commercial Litigation Division of this Court. Plaintiffs Aearo Technologies LLC, Aearo Holding LLC, Aearo Intermediate LLC, and Aearo LLC (collectively, the "Aearo entities") and 3M (together with Aearo, "Plaintiffs") filed a declaratory judgment action against insurance companies that sold general liability policies (the "Insurers").[1] In their complaint, Aearo and 3M seek declarations that the Insurers are obligated to pay for defense and indemnification costs in connection with underlying product liability lawsuits (the "Earplugs Lawsuits").

## II. FACTUAL AND PROCEDURAL BACKGROUND[2]

### A. Earplugs Lawsuits

The Aearo entities developed products for first responders, military personnel

---

[1] The Insurers are Royal Surplus Lines Insurance Company, Twin City Fire Insurance Company, General Star Indemnity Company, Liberty Surplus Insurance Corporation, ACE American Insurance Company, American Guarantee & Liability Insurance Company, American International Specialty Lines Insurance Company, American National Fire Insurance Company, Great American Insurance Company, Illinois National Insurance Company, Liberty Insurance Underwriters, Inc., National Union Fire Insurance Company of Pittsburgh, PA, Steadfast Insurance Company, and TIG Insurance Company.

[2] Unless otherwise noted, the factual background is drawn from the undisputed facts in the parties' pleadings and documentary exhibits submitted by the parties. The Court refers to the public filings in other actions between the parties for the limited purpose of providing procedural context to this dispute. The Court does not take judicial notice of those filings for the truth of their contents.

and other works.[3] One product was the Dual-Ended Combat Arms Earplugs Version 2 ("Combat Arms Earplugs").[4] In 2008, 3M acquired Aearo, and continued production of the Combat Arms Earplugs.[5]

In 2015, the sale of Combat Arms Earplugs was allegedly discontinued.[6] A few years later, claimants began filing lawsuits alleging hearing related-injuries in connection with the product.[7] The number of claimants grew to 280,000, resulting in the establishment of multi-district litigation (the "MDL") in April 2019.[8] A master form complaint was filed in federal multi-district litigation, comprised of negligence and strict liability claims against 3M and Aearo.[9] Claimants filed up to 2,000 lawsuits in Minnesota state court.[10]

In June 2019, 3M sent letters to Twin City Fire Insurance Company ("Twin City"), General Star Indemnity Company ("General Star"), Liberty Surplus Insurance Corporation ("Liberty"), and ACE American Insurance ("ACE")

---

[3] First Amended Complaint ("AC") ¶ 1 (D.I. 118).

[4] *Id.*

[5] *Id.* ¶ 2.

[6] Affidavit of Eric Rucker in Support of Plaintiffs' Motion for Partial Summary Judgment on Primary Insurers' Defense Obligations ("Rucker Aff."), Ex. 2 ("MDL Compl.") ¶ 155; Rucker Aff. ¶ 19.

[7] Rucker Aff. ¶ 4.

[8] *Id.* ¶ 6.

[9] *See* MDL Compl.

[10] Rucker Aff. ¶ 10.

regarding the Earplugs Lawsuits for potential coverage of defense and indemnity costs.[11] 3M and Aearo sought coverage from 2000 to 2008 under "Aearo's legacy insurance program."[12]

Meanwhile, the MDL court instituted a bellwether selection process to resolve the flood of lawsuits.[13] 10 trials out of 27 designated plaintiffs resulted in plaintiff verdicts.[14] Working through the remaining lawsuits, the MDL court then issued "wave" orders, working up to several hundred cases per wave for trial.[15] By the summer of 2022, 1,200 cases were in active discovery.[16]

Around this time Aearo Technologies, Inc. and related entities[17] initiated bankruptcy proceedings in the U.S. Bankruptcy Court for the Southern District of Indiana.[18] Aearo moved to extend the automatic stay to 3M—a non-debtor.[19] The

---

[11]  Affidavit of Susan Broin in Support of Plaintiffs' Motion for Partial Summary Judgment on Primary Insurers' Defense Obligations ("Broin Aff."), Ex. 10. Royal Surplus Lines Insurance Company did not receive a letter from 3M until April 20, 2021. Broin Aff., Ex. 11.

[12]  Broin Aff., Ex. 10 at 1.

[13]  Rucker Aff., Ex. 21.

[14]  *See In re Aearo Techs., LLC,* 2023 WL 3938436, at *3 (Bankr. S.D. Ind. Jun. 9, 2023).

[15]  *Id*. at *4.

[16]  *Id*..

[17]  The related entities are: Aearo LLC, Aearo Intermediate LLC, Aearo Holding, LLC, Aearo Mexico Holding Corp., Cabot Safety Intermediate LLC, and 3M Occupational Safety LLC.

[18]  *In re Aearo Techs. LLC*, 642 B.R. 891, 896 (Bankr. S.D. Ind. 2022).

[19]  *Id*.

bankruptcy court denied the motion[20] and, after conducting a five-day evidentiary hearing, dismissed the bankruptcy without prejudice a year later.[21]

Shortly after the dismissal, Aearo and 3M initiated this action on June 28, 2023, seeking coverage for hundreds of millions in defense costs paid in connection with the Earplugs Lawsuits.

On August 29, 2023, 3M and Aearo entered into a settlement, resolving the underlying lawsuits for more than $6 billion.[22] On November 20, 2023, Aearo and 3M filed an amended complaint, seeking coverage for the settlement in addition to the defense costs.

Aearo and 3M now move for partial summary judgment seeking a declaration that they are covered for all defense costs paid in connection with the Earplugs Lawsuits.[23] 3M has allegedly paid approximately $372 million defending the Earplugs Lawsuits.[24] Aearo Technologies LLC has allegedly paid only a small fraction, $411,696.70.[25]

---

[20] *Id*. at 912.

[21] *In re Aearo Techs. LLC*, 2023 WL 3938436, at *1 (Bankr. S.D. Ind. June 9, 2023).

[22] AC ¶ 7.

[23] *See* Plaintiffs' Opening Brief in Support of Their Motion for Partial Summary Judgment on Primary Insurers' Defense Obligations ("Pls.' Motion") (D.I. 149).

[24] Affidavit of Cheryl Muellner in Support of Plaintiffs' Motion for Partial Summary Judgment on Primary Insurers' Defense Obligations ("Muellner Aff."), Ex. 1 (D.I. 149).

[25] Affidavit of Michael Bertha in Support of Plaintiffs' Motion for Partial Summary Judgment on Primary Insurers' Defense Obligations ("Bertha Aff."), Ex. 1.

Twin City and General Star also move and join one another's motion for partial summary judgment seeking declarations that no coverage is owed.[26] ACE, Liberty and Royal Surplus Lines Insurance Company ("Royal Surplus") join the motions.

## C. Relevant Policy Provisions

Aearo purchased multi-tier general liability insurance coverage from September 1998 to September 2008. The Insurers issued these policies to a combination of entities, including Aearo Corporation, Aearo Company, Aearo Technologies Inc., and Aearo Holding Corp.[27] Aearo claims these entities are now

---

[26] *See* Opening Brief in Support of Twin City Fire Insurance Company's Motion For Partial Summary Judgment Declaring That Twin City Has No Obligation To Pay Defense Costs Incurred For The Combat Arms Earplug Litigation ("Twin City's Motion") (D.I. 152); General Star Indemnity Company's Opening Brief in Support of Motion for Partial Summary Judgment on Allocation of Defense Costs ("General Star's Motion") (D.I. 147).

[27] *See* Broin Aff., Ex. 1 ("Royal Surplus Policy") at 8 of 58 (Declarations) (listing Aearo Corporation as a "Named Insured"). The Royal Surplus Policy also extends to "all subsidiary and affiliated entities or successors, as may now or hereafter exist by way of acquisition, merger, formation or transformation and in which the Named Insured has at least 51% ownership or interest." *Id*. at 24 of 58 (End. 12), 13 of 58 (End. 1) (listing Aearo Company as a "Named Insured"). "Aearo Company" was a subsidiary of Aearo Corporation. *See* Affidavit of Rani Gupta in Support of Plaintiffs' Motion for Partial Summary Judgment on Primary Insurers' Defense Obligations, Exs. 1-2, 6 (D.I. 149); Broin Aff., Ex. 2 ("Twin City Policy") at 1 of 39 (Declarations) (listing Aearo Corporation as "Named Insured"); Broin Aff., Ex. 3 ("General Star Policy") at 1 of 58 (Declarations) (listing Aearo Company as "Named Insured"); Broin Aff., Ex. 4 ("Liberty Policy 2002-2003") at 25 of 45 (End. 19) (listing Aearo Corporation and Aearo Company as "Named Insured[s]"); Broin Aff., Ex. 5 ("Liberty Policy 2003-2004") at 1 of 51, 33 of 51 (End. 21) (listing Aearo Company and Aearo Corporation as "Named Insured[s]"); Broin Aff., Ex. 6 ("Liberty Policy 2004-2005") at 3 of 62 (Revised Declarations) (listing Aearo Company, AC Safety Holding Corporation and Aearo Corporation as "Named Insured[s]"); Broin Aff., Ex. 7 ("Liberty Policy 2005-2006") at 46 of 66 (End. 30) (listing Aearo Holding Corp. and its subsidiaries as "Named Insured[s]"); Broin Aff., Ex. 8 ("Liberty Policy 2006-2007") at 1 of 55 (Declarations) (same);

5

Aearo LLC, Aearo Technologies LLC, Aearo Intermediate LLC, and Aearo Holding LLC, respectively.[28]

There are several policies at issue in the parties' motions. Royal Surplus issued a two-year policy from September 1998 to September 2000 (the "Royal Surplus Policy").[29] Twin City issued a single policy from September 2000 to November 2001 (the "Twin City Policy").[30] General Star issued a policy from November 2001 to September 2002 (the "General Star Policy").[31] Liberty issued five policies from September 2002 to September 2007 (the "Liberty Policies").[32] ACE issued a policy from September 2007 to September 2008 (the "ACE Policy") (collectively, the "Policies").[33]

The Policies provide coverage for damages because of bodily injury.[34]

---

Broin Aff., Ex. 9 ("ACE Policy") at 26 of 69 (End. 6) (listing Aearo Holding Corporation, Aearo Company and entities which they control as "Named Insured[s]").

[28] *See* Appendix of Key Policy Language Referenced in Plaintiffs' Opposition Briefs (D.I. 199).

[29] Royal Surplus Policy at 8 of 39 (Declarations).

[30] Twin City Policy at 1 of 39 (Declarations).

[31] General Star Policy at 1 of 58 (Declarations).

[32] *See, e.g.*, Liberty Policy 2002-2003 at 1 of 45, and Liberty Policy 2006-2007 at 1 of 55.

[33] ACE Policy at 1 of 69 (Declarations).

[34] Royal Surplus Policy at 49 of 58 (§ I.A.1.a); Twin City Policy at 8 of 39 (§ I.1.a); General Star at 4 of 58 (§ I.A.1.a); Liberty Surplus Policy 2002-2003, Commercial General Liability Self-Insured Retention Coverage Form, number GL_SIR_1002_07/01 ("GL_SIR") at 28 of 45 (§I.A.1.a); ACE Policy at 4 of 69 (§I.A.1.a).

Coverage only applies after exhaustion of the Policies' Self-Insured Retention.[35] The Self-Insured Retention under each policy is $250,000.[36] Payments of defense costs apply to the "limits of insurance.[37] They also generally apply to the Policies Self-Insured Retentions—but with a few notable exceptions.[38]

Under the Twin City and the 2002 through 2005 Liberty Policies, payments of defense costs from third parties do not apply to the Self-Insured Retention. Those policies provide that the Self-Insured Retention "shall not be reduced by . . . any payment made on your behalf by another."[39] Further, the obligation to pay the Self-

---

[35] Royal Surplus Policy at 44 of 58 (End. 33); Twin City Policy at 8 of 39 (§ I.1.a); General Star Policy at 28 of 58 (SIR End. II §1(A) and (B)); GL_SIR at 37 of 45 (§ VI.4.a); *see, e.g.*, Liberty Surplus Policy 2003-2004, Self-Insured Retention Endorsement, number CGL_1026_0103 ("SIR_End") at 16 of 51 (§ A); ACE Policy at 59 of 69 (End. 30 § B).

[36] Royal Surplus Policy at 44 of 58 (End. 33); Twin City Policy at 27 of 39 (End. 1); General Star Policy at 28 of 58 (SIR End. II § 1(A)); Liberty Surplus Policy 2002-2003 at 1 of 45 (Item 4); SIR_End at 15 of 51; ACE Policy at 59 of 69 (End. 30 § A).

[37] Royal Surplus Policy at 53 of 58 (§ I, Supplementary Payments); Twin City Policy at 14 of 39 (§ I, Supplementary Payments); General Star Policy at 14 of 58 (§ I, Supplementary Payments); GL_SIR at 36 of 45 (§ V); ACE Policy at 43 of 69 (End. 16 at 6).

[38] Royal Surplus Policy at 44 of 58 (End. 33 § 3); Twin City Policy at 8 of 39 (§ I.1.b); General Star Policy at 55 of 58 (End. 14 § I.B); GL_SIR at 36 of 45 (§ V); ACE Policy 59 of 69 (End. 30 § B).

[39] Twin City Policy at 24 of 39 (§ V.26); GL_SIR at 38 of 45 (§ VI.4.c.2). This provision also appears in the ACE Policy. *See* ACE Policy at 41 of 69 (End. 16 § III.10) ("The 'Self Insured Retention' shall not be satisfied by payment by the insured of any deductible of any other policy or payments made on behalf of the insured by any other insurer, person or entity."). Though the 2006-2007 Liberty Policy does not contain the same provision regarding third-party payments, it does provide that "you," meaning the Named Insured, must pay the Self-Insured Retention. *See* Liberty Policy 2006-2007 at 21 of 55 (End. 12 § A) ("For any liability to which the policy applies, you shall pay the Self-Insured Retention before we have any obligation to pay loss or damages or participate in any investigation or defense.").

Insured Retention applies "fully and separately to each 'policy period.'"[40]

Under the Twin City, the 2006-2007 Liberty and General Star Policies, payments made without the written consent of the Insurers do not count towards the Self-Insured Retention. The Twin City Policy provides in part that Twin City will provide coverage only to the extent that the Self-Insured retention "has been exhausted solely by the payment of 'claim expenses.'"[41] "Claim expenses" are "[a]ll expenses incurred by or on behalf of the insured with our written consent."[42] The General Star Policy provides that "[s]hould any 'claim' or 'suit' to which this policy applies appear likely to exceed the Retained Limit, no loss expenses or legal expenses shall be incurred on behalf of us without our prior consent."[43] Finally, the 2006 to 2007 Liberty Policy provides that "[n]o insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent."[44]

### D. Parties' Contentions

Plaintiffs seek coverage for the entirety of defense costs expended by 3M and

---

[40] Twin City Policy at 24 of 39 (§ V.26); GL_SIR at 38 of 45 (§ VI.4.c).

[41] Twin City Policy at 8 of 39 (§ I.1.a.).

[42] *Id*. at 21 of 39 (§ V.8).

[43] General Star Policy at 29 of 58 (SIR End. II § II (B)). On reply, Plaintiffs argue that ACE opted out of requiring ACE's "prior written approval" because ACE did not check the appropriate box in Endorsement 16 of the "Supplementary Payments" Section. Thus, the prior written approval condition appears to not apply for the ACE Policy. *See* ACE Policy at 39 of 69 (§ III).

[44] Liberty Policy 2006-2007 at 47 of 55 (§ IV.d).

8

Aearo in the Earplugs Lawsuits, despite the fact that 3M is not a policyholder under any of the Policies and paid the substantial majority of costs. Plaintiffs argue that because 3M's costs were paid jointly on behalf of 3M and Aearo, they are entitled to coverage under the Policies. In Plaintiffs' view, the "pointless formality" of requiring that payments come out of an Aearo account should not bar coverage.[45] In the alternative, Plaintiffs argue that Aearo satisfied the Self-Insured Retention because Aearo Technologies LLC paid $411,696.70 in defense costs.

Insurers argue that numerous contractual and factual hurdles preclude the rulings Plaintiffs seek. They contend that Plaintiffs improperly aggregate the Earplugs Lawsuits as an undifferentiated mass under the Policies' coverage requirements. Further, they contend that issues of fact preclude summary judgment in Plaintiffs' favor. Those issues relate to various conditions precedent to coverage such as the lack of Insurers' consent to the defense expenses allegedly incurred, reporting obligations, notice and exhaustion of the Self-Insured Retention.

Going a step further, General Star and Twin City move for declarations that Plaintiffs are not entitled to coverage. General Star argues that Plaintiffs' "all sums" approach to coverage is not supportable because coverage determinations must be made on a lawsuit-by-lawsuit basis, 3M is not an insured under any of the Policies, and allocation of defense costs is required to the extent 3M and Aearo were jointly

_____

[45] Pls.' Motion at 28-29.

9

represented and did not segregate defense costs by lawsuit.[46]  Plaintiffs oppose

General Star's motions on the grounds that defense coverage is warranted as long as

any claim among the thousands of lawsuits is potentially covered by a policy.

Twin City argues that 3M is not entitled to subrogation for defense costs and

that Aearo neither satisfied the Self-Insured Retention nor obtained the requisite

consent for defense costs.  Plaintiffs disagree with Twin City's interpretation of its

policy that payments from 3M do not count towards the Self-Insured Retention, and

dispute that they failed to obtain prior consent.

### III.    STANDARD OF REVIEW

The Court may grant summary judgment when "the record demonstrates that

'there is no genuine issue as to any material fact and that the moving party is entitled

to judgment as a matter of law.'"[47]  The Court only determines whether genuine

issues of material fact exist, and does "not decide such issues."[48]  To achieve

summary judgment, the movant must carry its burden to demonstrate its motion is

supported by undisputed material facts.[49]  If the movant is successful, then the

---

[46]   General Star's Motion at 3.

[47]   *Parexel Int'l (IRL) Ltd. v. Xynomic Pharms., Inc.*, 2020 WL 5202083, at *4 (Del. Super. Ct. Sept. 1, 2020) (quoting Del. Super. Ct. Civ. R. 56(c)).

[48]   *Merrill v. Crothall-American Inc.*, 606 A.2d 96, 99 (Del. 1992) (citation omitted); *see also Oliver B. Cannon & Sons, Inc. v. Dorr-Oliver Inc.*, 312 A.2d 322, 325 (Del. Super. Ct. 1973).

[49]   *Envolve Pharmacy Sols., Inc. v. Rite Aid Headquarters Corp.*, 2023 WL 2547994, at *7 (Del. Super. Ct. 2023) (citing *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979)).

burden shifts to the non-movant to demonstrate that a "genuine issue for trial" still exists.[50] The Court views the facts and draws all reasonable inferences in the light most favorable to the non-movant.[51] Where cross-motions for summary judgment are filed and an issue of material fact exists, summary judgment is not appropriate.[52]

## IV.   DISCUSSION

The Earplugs Lawsuits allege injury across a multi-year period. Determining which claims fall under which policy is a genuine issue of material fact. There are more than 280,000 lawsuits, each alleging injury at different points in time and not all lawsuits name the same entities. As will be explained in further detail below, coverage determinations must be done on a lawsuit-by-lawsuit basis. Because Plaintiffs have not shown an absence of a genuine issue of material fact as to the satisfaction of the Self-Insured Retention under any policy, Plaintiffs' motion will be denied. General Starr's motion will be granted in part and denied in part; Twin City's motion will be granted.

The Court applies basic contractual principles under Delaware law to resolve

---

[50]   Del. Super. Ct. Civ. R. 56(e).

[51]   *Judah v. Del. Tr. Co.*, 378 A.2d 624, 632 (Del. 1977) (citations omitted).

[52]   *Northrop Grumman Innovation Sys., Inc. v. Zurich Am. Ins. Co.*, 2021 WL 347015, at *7 (Del. Super. Ct. Feb. 2, 2021).

the parties' dispute.[53] Under Delaware law, the interpretation of contractual language, including that of insurance policies, is a question of law.[54] The Court will read a contract as a whole and will give each provision and term effect, so as not to render any part of the contract mere surplusage.[55] It will not read a contract to render a provision or term "meaningless or illusory."[56] If the contract language is "clear and unambiguous, the parties' intent is ascertained by giving the language its ordinary and usual meaning."[57] A contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings.[58] Where the language is ambiguous, the contract is to "be construed most strongly against the insurance company that drafted it."[59] "A contract is not rendered ambiguous simply because the parties do not agree upon its proper construction."[60]

---

[53] Where there is no conflict, "no choice-of-law analysis is necessary, and the forum state's laws will apply." *Am. Bottling Co. v. BA Sports Nutrition, LLC*, 2021 WL 6068705, at *16 (Del. Super. Ct. Dec. 15, 2021). The parties do not identify a conflict of law, nor does the Court find any here.

[54] *O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281, 286 (Del. 2001).

[55] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010).

[56] *Id*.

[57] *RSUI Indem. Co. v. Murdock*, 248 A.3d 887, 905 (Del. 2021).

[58] *Rhone-Poulenc Basic Chem. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992).

[59] *RSUI Indem. Co.*, 248 A.3d at 906.

[60] *Rhone–Poulenc Basic Chem. Co.,* 616 A.2d at 1195.

**A. Whether Payments by 3M Count Towards the Policies' Self-Insured Retentions**

Under the express language of the Royal Surplus, Twin City, Liberty and ACE Policies, costs paid by 3M do not count towards the Self-Insured Retention. The Royal Surplus, Twin City, Liberty and ACE Policies provide that either "you" or the "insured" must pay the Self-Insured Retention.[61] 3M, however, is not an insured under any of the Policies. Moreover, the Twin City, the 2002 through 2005 Liberty Policies and (arguably) ACE Policies expressly exclude payments made by another on the insured's behalf from counting towards the Self-Insured Retention.[62]

With respect to the General Star Policy, it is not as clear whether payment by the Insured is expressly required, and thus whether 3M's payments for joint defense costs erode Aearo's Self-Insured Retention. The General Star Policy provides that

---

[61] *See* Royal Surplus Policy at 44 of 58 (End. 33) ("'Retained Limit' is the amount shown below, which you are obligated to pay and only includes damages otherwise payable under this policy."); Twin City Policy at 24 of 39 (§ V.26) ("'self-insured retention' means the amount you or any insured must pay as damages and 'claim expenses . . .'"); GL_SIR at 37 of 45 (§ VI.4.a) ("Insurance provided under this policy, including all endorsements thereto, is excess over the 'Self-Insured Retention,' which amount must be paid by the insured before this policy requires any payments."); SIR_End at 16 of 56 (§ A) ("For any liability to which the policy applies, you shall pay the Self-Insured Retention before we have any obligation to pay loss or damages or participate in any investigation or defense"); ACE Policy at 41 of 69 (End. 16 § III.10) ("The 'Self Insured Retention' under this policy must be satisfied by actual payment by you. The 'Self Insured Retention' shall not be satisfied by payment by the insured of any deductible of any other policy or payments made on behalf of the insured by any other insurer, person or entity.").

[62] Twin City Policy at 24 of 39 (§ V.26); GL_SIR at 38 of 45 (§ VI.4.c.2); ACE Policy at 41 of 69 (End. 16 § III.10) ("The 'Self Insured Retention' shall not be satisfied by payment by the insured of any deductible of any other policy or payments made on behalf of the insured by any other insurer, person or entity.")

13

the:

> Retained Limit applies to damage payments as well as "claim" handling and/or legal expenses (excluding salaries of employees and office expenses of the insured) incurred by the insured in the investigation, negotiation, settlement and defense of any "claim" or "suit" to which this policy applies.[63]

Unlike in the other Policies, there is no express language that the Retained Limit must be "paid" by the insured; the only relevant language the parties identify is that the "Retained Limit" applies to those defense costs "incurred by the insured." It is reasonable to infer that satisfaction of the retained limit requires *payment* of incurred defense costs; it is also reasonable to infer that payment come from the insured. The parties, however, did not brief in detail whether these are the only reasonable interpretations to this provision in the General Star Policy. Thus, at least as to the other Policies, costs paid by 3M do not count towards the Self-Insured Retention.

Plaintiffs contend that 3M's payments should count on behalf of Aearo because 3M is the parent company of the other plaintiffs; the payments for costs were based on the joint defense of the lawsuits; Aearo is potentially liable based on the allegations of the underlying lawsuits; and the policies do not prohibit payments from 3M from counting towards exhaustion of the Self-Insured Retention. In their view, the requirement that 3M's funds be "transferred to Aearo and then, in the next

---

[63] General Star Policy at 28 of 58 (SIR End. II §1 (B)).

moment, paid out in satisfaction of invoices for attorneys' fees and other defense costs" is a "pointless formality."[64]

The Court disagrees that this requirement is a "pointless formality." The purpose of requiring that the insured pay the retention is so that the insured can partially bear the costs of the risk that is being insured. [65] Aearo, however, seeks to credit to itself those defense costs paid for by 3M, a non-policy holder who is not bound by the Policies' restrictions and requirements. This result is contrary to the plain language of the Royal Surplus, Twin City, Liberty and ACE Policies.

As a fallback, Plaintiffs argue that the Policies provide for a so-called "savings" clause in the event the Self-Insured Retention is not exhausted. For example, the Twin City Policy states that:

> You shall do whatever is required, including provision of sufficient funds, to maintain the "self-insured retention" in full effect during the currency of this policy. If the "self-insured retention" becomes invalid, suspended, unenforceable or uncollectable for any reason, including bankruptcy or insolvency, we shall be liable only to the extent we would have been had such "self-insured retention" remained in full effect.[66]

---

[64]  Pls.' Motion at 28-29.

[65]  George William Van Cleve, *Bankruptcy and the Future of Insurance Risk-Sharing*, 21 AM. BANKR. INST. L. REV. 99, 101 (2013) ("SIR provisions have benefits for both insurance consumers and insurers . . . . Insurers and consumers also benefit from risk-sharing because it reduces moral hazard, a problem inherent in any type of private or social insurance. Risk-sharing benefits consumers by enabling them to avoid two unpalatable alternatives: (1) purchasing full risk coverage or (2) full self-insurance.").

[66]  Twin City Policy at 19 of 39 (§ IV.9); Royal Surplus Policy at 39 of 58 (End. 28) ("For all purposes of this policy, if the self-insured retention is not available or collectible because of (a) the bankruptcy or insolvency of the named insured or (b) the inability or failure for any other reason of the named insured to comply with the provisions of the retention endorsement, then this

Yet, Plaintiffs have not shown that any of the policyholders were unable to pay the Self-Insured Retention due to the retention's lack of availability, collectability, invalidity, or suspension. The only support Plaintiffs provide is that Aearo Technologies LLC was the sole Aearo entity that had a bank account from which to make payments.[67] But Plaintiffs provide no reason why the other Aearo entities were unable to set up their own accounts; nor do they explain why failure to set up an account fell outside of its obligation to "do whatever is required, including provision of sufficient funds, to maintain the 'self-insured retention' in full effect during the currency of this policy."[68]

For these reasons, 3M's payments of defense costs do not apply to the Self-Retention Amount under the Royal Surplus, Twin City, Liberty and ACE Policies.

### B. A Genuine Issue of Material Fact Exists as to Exhaustion of the Self-Insured Retention.

That leaves the question of what payments *Aearo* made to satisfy the Self-Retention Amount, and whether there is a genuine issue of material fact that those payments satisfy the Self-Retention Amounts under any of the Policies.

---

policy should apply (and amounts payable hereunder shall be determined) as if such self insured retention were available and collectible").

[67] Plaintiffs' Omnibus Reply Brief in Support of their Motion for Partial Summary Judgment on Primary Insurers' Defense Obligations at 21-22 (D.I. 232); Bertha Aff. ¶ 4.

[68] Twin City Policy at 19 of 39 (§ IV.9).

16

The only payments that the Plaintiffs identify is $411,696.70 from Aearo Technologies LLC.[69] Plaintiffs, however, have not specified to which policy period its payments applied—a necessary step in determining under the Twin City and several of the Liberty Policies that the payments apply separately under each policy period.[70] In addition, the Insurers dispute whether Aearo even made such payments, pointing to the lack of supporting documentation and Aearo's representations to the contrary before the bankruptcy court.[71] The remaining $372 million in defense costs came from litigation-related invoices approved by 3M's in-house legal department and submitted into 3M's matter management system.[72] Whether these costs were incurred jointly or not is a genuine issue of material fact, and even if they were incurred jointly, most of the Policies expressly provide that Aearo, not 3M, must pay the defense costs to satisfy the Self-Insured Retentions.

---

[69] Bertha Aff., Ex. 1.

[70] Twin City Policy at 24 of 39 (§ V.26); GL_SIR at 38 of 45 (§ VI.4.c).

[71] *See* Defendant and Counterclaim Plaintiff Twin City Fire Insurance Company's Opposition to Plaintiffs' Motion for Partial Summary Judgment on Primary Insurers' Defense Obligations at 23-25 (D.I. 186); Liberty Surplus Insurance Corporation's Opposition to Plaintiffs' Motion For Partial Summary Judgment on Primary Insurers' Defense Obligations ("Liberty Ans. Br.") at 12 (D.I. 188) ("At the hearing on the Motions to Dismiss the Aearo bankruptcy, Aearo's Chief Restructuring Office John Castellano testified, under oath, before the Court that, prior to the bankruptcy petition date in July 2022, Aearo had not paid any CAEv2 Lawsuits liability or defense costs, and 3M had paid all of those defense costs.").

[72] *See* Muellner Aff. ¶ 2.

Finally, Aearo has not shown the absence of a genuine issue of material fact that defense costs were incurred after having obtained the written consent of Twin City, Liberty or General Star.[73] Aearo has not pointed to any evidence indicating that it expressly sought consent for payments of any defense costs that it incurred.[74] Indeed, several Insurers raise a genuine issue of material fact as to whether Aearo provided adequate notice before Aearo (or 3M on Aearo's behalf) made a number of strategic litigation decisions, including selection of defense counsel, joint representation with 3M and strategies related to the 26 bellwether trials.[75]

---

[73] Twin City Policy at 19 (§ IV 5(e)), 21 of 39 (§ V.8), 14 of 39 (§ I, Supplementary Payments); General Star Policy at 14 of 58 (§ I, Supplementary Payments), 29 of 58 (SIR End. II § II (B)); Liberty Policy 2006-2007 at 47 of 55 (§IV.d). The Royal Surplus Policy does not contain a consent to defense expenses clause; however, the duty to reimburse defense expenses ripens upon adequate notice or tender of the lawsuits. Genuine issues of material fact exist as to whether Plaintiffs tendered the lawsuits prior to paying the defense costs. *See* Transverse Specialty Insurance Company, fka Royal Surplus Lines Insurance Company's Answering Brief in Opposition to Plaintiffs' Motion for Partial Summary Judgment ("Transverse Ans. Br.") at 5 (D.I. 189).

[74] Factual questions remain that are not suitable to resolve on a motion for summary judgment regarding any prejudicial effect from Plaintiffs' alleged failure to obtain the Insurers' consent for defense costs incurred or paid. *See Solera Holdings, Inc. v. XL Specialty Ins. Co.*, 213 A.3d 1249, 1259 (Del. Super. Ct. 2019), *opinion clarified,* 2019 WL 4120688 (Del. Super. Ct. Aug. 29, 2019)*, and rev'd on other grounds sub nom. In re Solera Ins. Coverage Appeals*, 240 A.3d 1121 (Del. 2020) ("I cannot find any reason why the implied prejudice requirement that Delaware courts apply to consent-to-settle clauses would not also apply to the Consent Clause in this case. Both consent-to-settle and consent-to-defense provisions are meant to allow the insurer a meaningful opportunity to participate in litigation and to protect the insurer from prejudice, but a strict interpretation of either provision would lead to forfeiture of coverage. Implying the prejudice requirement in both circumstances protects an insured who has breached a consent provision from the harsh result of forfeiture, but only if the insured can prove by competent evidence a lack of prejudice to the insurer.").

[75] Defendant General Star Indemnity Company's Answering Brief in Opposition to Plaintiffs' Motion for Partial Summary Judgment on Primary Insurers' Defense Obligations at 3, 26-27 (D.I. 187); Affidavit of Suzanne N. Bold In Support of Defendant General Star Indemnity Company's

In sum, Plaintiffs are unable to overcome the contractual and factual barriers before them in obtaining the relief on their motion for partial summary judgment. Plaintiffs' motion will be denied.

### C. Coverage Determinations Must be Decided on a Lawsuit-by-Lawsuit Basis

General Starr seeks three declarations in its motion for partial summary judgment. It seeks a declaration that coverage obligations must be decided on a suit-by-suit basis; it has no coverage obligations for the defense costs incurred by 3M because 3M is not an insured under the policy; and it may seek allocation of those defense costs for lawsuits that allege bodily injury only in General Star's policy period.

Coverage obligations must be decided on a lawsuit-by-lawsuit basis. The

---

Answering Brief in Opposition to Plaintiffs' Motion for Partial Summary Judgment on Primary Insurers' Defense Obligations (D.I. 187); Transverse Ans. Br. at 5.

Plaintiffs further argue that Liberty waived its right to argue that the Self-Insured Retention was not satisfied because it had previously acknowledged that it was satisfied. To prove waiver, a party must show that another voluntarily and intentionally relinquished a known right. *Gower v. Trux, Inc.*, 2022 WL 534204, at *10 (Del. Ch. Feb. 23, 2022). Genuine issues of material fact exist as to whether Liberty voluntarily and intentionally relinquished a known right. Liberty argues that it relied upon Plaintiffs' representations that the Self-Insured Retention had been exhausted. *See* Affidavit of Christina O'Brien in Support of Liberty Surplus Ins. Corp.'s Opposition to Plaintiffs' Motion for Partial Summary Judgment on Primary Insurers' Defense Obligations ("O'Brien Aff."), Ex. 2 (D.I. 188) ("3M has been defending these matters and agrees that these substantial defense expenditures clearly exhaust the aggregate self-insured retention underlying Liberty's limits of liability under any approach the parties may decide to adopt."). Liberty further argues that Plaintiffs did not produce in a timely manner requested retention agreements, invoices for defense counsel or explanations as to how those costs were allocated. O'Brien Aff., Exs. 4-5. Liberty also qualified its acknowledgment that the Self-Insured Retention had been satisfied with a reservation of rights and noted that it had not yet received supporting documentation. *See* Broin Aff., Ex. 12. Based on the record, the Court cannot find on a motion for summary judgment that Liberty waived its right to argue that the Self-Insured Retention was not met.

General Star Policy provides coverage for "damages because of 'bodily injury' . . . to which this insurance applies."[76] "This insurance applies to 'bodily injury' . . . only if the 'bodily injury' . . . occurs during the policy period."[77] There are more than 280,000 underlying lawsuits in the MDL court, and 2,000 in Minnesota state court.[78] Not all claims allege bodily injury during the General Star Policy Period, nor do all claims name Aearo entities as defendants.[79] Despite this, Plaintiffs seek coverage for the entirety of the defense costs expended in the Earplugs Lawsuits.

Plaintiffs argue that as long as any one lawsuit among the Earplugs Lawsuits alleges bodily injury occurring within the General Star policy period, all lawsuits in the MDL court and Minnesota court, including those that allege bodily injury occurring outside the policy period, are covered. Plaintiffs rely on caselaw that extends the duty to defend to covered and non-covered claims, but those rulings are with respect to any one lawsuit, not the mass of lawsuits aggregated in multi-district litigation.[80] Extending coverage for lawsuits that allege bodily injury occurring outside the policy period also goes against the plain language of the General Star

---

[76] General Star Policy at 4 of 58 (§ 1.A.1.a).

[77] *Id*.

[78] Rucker Aff. ¶¶ 6, 10.

[79] *See, e.g.*, *id*., Ex. 12 (claimant first noticed injury in 2009); Ex. 13 (2004); Ex. 14 (2005); Ex. 16 (2005); Ex. 17 (2006); Ex. 18 (2003); Ex. 20 (2005).

[80] Rucker Aff. at ¶¶ 4-7.

Policy. Coverage for damages because of "bodily injury," applies "only if" the "bodily injury" occurs during the policy period.[81] General Star's motion for partial summary judgment seeking a declaration that coverage obligations must be decided on a lawsuit-by-lawsuit basis will, therefore, be granted.

General Star's request for a declaration that it has no coverage obligations for the defense costs incurred by 3M will be denied. A genuine issue of material fact exists as to whether the defense costs were jointly incurred by 3M and Aearo. To the extent they were jointly incurred, based on the undeveloped record at this stage in the proceedings, the Court cannot conclude to what extent those costs should be equitably allocated. More importantly, for purposes of this motion, it would be premature and potentially advisory to decide the issue of allocation given the genuine issues of material fact that exist as to the satisfaction of various conditions precedent to coverage such as the Self-Insured Retention, consent to defense expenses clause, and other notice requirements.[82] The Court will therefore deny General Star's motion with respect to the declaration that General Star is not obligated to pay for 3M's defense costs.

---

[81]   General Star Policy at 4 of 58 (§ I.A.1.a).

[82]   *Id*. at 29 of 58 (END II §§ II, III.2).

Genuine issues of material fact exist as to whether General Star may seek allocation of those defense costs for lawsuits that allege bodily injury only in General Star's policy period. Under the Larger Settlement Rule:

> An insurer must pay all costs associated with a settlement or defense, without allocating any costs to the uninsured parties or matters if: (i) the settlement [or defense] resolves, at least in part, insured claims; (ii) the parties cannot agree as to the allocation of covered and uncovered claims; (iii) the allocation provision does not provide for a specific allocation method (e.g., pro rata or alike); and (iv) the defense or settlement costs of the litigation were not higher "than they would have been had only the insured claims been defended or settled."[83]

A genuine issue of material fact exists as to (iv)—whether defense or settlement costs of the litigation were not higher than they would have been had the insured claims been defended or settled. General Star argues that the underlying claimants were primarily interested in pursuing 3M in the Earplugs Lawsuits and that Aearo, but for 3M's financial support, would have successfully maintained bankruptcy protection.[84]

General Star's theory involves fact-intensive questions regarding the Larger Settlement Rule that are not suitable to resolve on a motion for summary judgment. The Court will therefore deny General Star's motion with respect to whether it may

---

[83] *Clover Health Invs., Corp. v. Berkley Ins. Co.*, 2023 WL 1978227, at \*10 (Del. Super. Ct. Feb. 6, 2023), *cert. denied*, 2023 WL 2595733 (Del. Super. Ct. Mar. 9, 2023), and *appeal refused sub nom. Endurance Risk Sols. Assurance Co. v. Clover Health Invs., Corp.*, 295 A.3d 136 (Del. 2023).

[84] General Star's Motion at 28-31.

seek allocation of those defense costs for lawsuits that allege bodily injury only in General Star's policy period. The Court notes, however, that this declaration may become moot given General Star's consent to defense expenses clause.

## D. Twin City's Motion

Twin City moves for partial summary judgment that it has no obligation to reimburse Plaintiffs for the defense and indemnity costs paid in the Earplugs Lawsuits. The Twin City Policy's "Named Insured" is Aearo Corporation, which Plaintiffs claim is now Aearo LLC.[85] As explained above, Aearo LLC has not made any payment for defense costs that satisfy the Self-Insured Retention, and Twin City has no obligation to provide coverage for sums in excess of the Self-Insured Retention. 3M's payments also do not reduce the Self-Insured Retention because "[a]ny payment made on your behalf by another, including any payment from any other applicable insurance" do not reduce the Self-Insured Retention.[86] Twin City is, therefore, not obligated to reimburse the defense costs paid by 3M.[87] Twin City's motion will be granted.

---

[85] Twin City Policy at 1 of 39 (Declarations) (listing Aearo Corporation as "Named Insured").

[86] *Id*. at 24 of 39 (§ V.26).

[87] The Court does not find it necessary to address Twin City's argument of equitable subrogation because even if subrogation was allowed, the plain language of the Twin City Policy governs and would lead to the same outcome. *Broadway v. Allstate Prop. & Cas. Ins. Co*., 2015 WL 4749176, at *4 (Del. Super. Ct. Aug. 11, 2015) ("A subrogee-insurer stands in the shoes of its insured. And its rights are limited to those of its insured.").

## V.    CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Partial Summary Judgment is **DENIED.**   General Star's Motion is **GRANTED IN PART AND DENIED IN PART**.   Twin City's Motion is **GRANTED**.

The Court understands that the parties have considered potential mediators, and reminds the parties that pursuant to the parties' Case Management Order, "[m]ediation is mandatory in this case and shall be scheduled no later than 60 days following the Court's rulings on the Parties' Initial Dispositive Motions."[88]

**IT IS SO ORDERED.**

_____
**Sheldon K. Rennie, Judge**

---

[88]   D.I. 155.